UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CARMEN E. BURGOS,                       :
                      Plaintiff,        :
                                        :        10 Civ. 2677 (DLC)
            -v-                         :
                                        :        OPINION AND ORDER
MICHAEL J. ASTRUE, COMMISSIONER OF      :
SOCIAL SECURITY,                        :
                      Defendant.        :
                                        :
----------------------------------------X

APPEARANCES

For the plaintiff:
Carolyn Rose
Richard T. Harris & Associates
96-14 63rd Drive
Rego Park, NY 11374

For the defendant:
Leslie A. Ramirez-Fisher
United States Attorney's Office
Southern District of New York
86 Chambers Street
3rd Floor
New York, NY 10007

DENISE COTE, District Judge:

     Plaintiff Carmen E. Burgos ("Burgos") brings this action

pursuant to § 205(g) of the Social Security Act ("the Act"), 42

U.S.C. § 405(g), seeking review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her

eligibility for Disability Insurance Benefits ("DIB"). The

Commissioner has moved for judgment on the pleadings affirming

his final decision. Burgos has cross-moved for judgment on the

pleadings awarding benefits or, in the alternative, that the case be remanded for further proceedings to address any legal error or to develop the record.  For the following reasons, the Commissioner's motion is denied and Burgos's motion is granted in part.  The case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

BACKGROUND

The following facts are taken from the administrative record and are undisputed.  Burgos was born in 1960 and has an Associate's Degree in computer science.  She was 47 years old when she submitted the application for DIB at issue in this case, and is now 50 years old.  Burgos worked for many years as a stacks supervisor in a library at the City University of New York.  Among other things, this job involved reshelving books, with some moderate to heavy lifting.  In March 2003, Burgos had an accident at work that resulted in injuries that qualified her for a "closed period" of disability from September 2003 to January 2005.  Burgos then returned to work as a stacks supervisor until August 28, 2007.

The application for DIB at issue here was submitted on September 17, 2007.  In her Disability Report, Burgos claimed that limiting her ability to work is rotator cuff surgery,

osteoarthritis in both knees, lower back pain and arthritis in
both feet and thumbs.  She claimed that she is unable to use her
left arm at all, and that she has foot and knee pain after
walking or standing for an extended period.  Burgos stated that
her frequent medical and physical therapy appointments also
interfered with her ability to work.  She also claimed that her
home activities were limited, as her condition made some tasks,
such as dressing, undressing and combing her hair, more
difficult.  Burgos stated in her report that she felt that since
her accident in 2003, her knee pain had been getting
progressively worse.

I.   Medical Record

    A.   Treatment Prior to Burgos's Onset Date

    In March 2003, Burgos fell while at work, sustaining
injuries to her left shoulder, knees and hands.  She was treated
for the injuries by Dr. Robert Haar ("Haar"), an orthopedic
surgeon, and Dr. Eugene Liu ("Liu"), a physical medicine and
rehabilitation specialist.  Both Haar and Liu continued to treat
Burgos on a regular basis through at least March 2009.  The
Commissioner awarded Burgos a period of disability from
September 2003 to January 2005 due to the injuries resulting
from the March 2003 fall.

    Haar ordered MRIs for both of Burgos's knees in 2003.  The
MRIs indicated that her right knee had a meniscal tear, whereas

her left knee was normal.  In September 2003, Haar performed
arthroscopic surgery on Burgos's right knee.  In October, he
found that the right knee was stiff and had loss of flexion.
His treatment included an injection of .75% Marcaine with
DepoMedrol.  In February 2004, Haar's examination of Burgos's
knees found adhesives developing in the right knee and
degenerative joint disease and possible derangement of the left
knee.  An MRI of the left knee showed mild chondromalacia
patella.

    In February 2004, Burgos complained to Haar about pain in
her left shoulder.  His examination found tenderness and
decreased range of motion.  An MRI found that the left shoulder
had severe extensive tendon damage with partial tear of the
rotator cuff.  Haar determined that Burgos required arthroscopic
surgery of the left shoulder and sought authorization for this
surgery.

    In March 2004, Burgos complained of back and knee pain to
Haar, who found tenderness and muscle spasms in her lower lumbar
area.  An MRI of Burgos's right knee showed patellofemoral
osteoarthritis.  In August 2004, Haar noted muscle spasms in
Burgos's neck and back, indications of lower back pain,
impingement in the left shoulder, and tenderness and crepitus in
the left knee.  Also in August, Burgos complained of pain in her
right thumb.  Haar found tenderness at the base of the thumb,

but the x-ray showed that it was normal.  Haar noted that he had
the impression that she suffered from arthritis of the
carpometacarpal joint and/or De Quervian disease.  In October
2004, Haar found decreased range of motion in the
carpometacarpal joint.

In January 2005, Burgos returned to work.  Throughout 2005,
Burgos visited Haar regularly for treatment of back, left
shoulder and bilateral knee pain.  In June, Haar noted that her
back pain was related to her bilateral knee pain and antalgic
gait.  In July, Haar was granted authorization to conduct the
requested arthroscopic surgery on Burgos's left shoulder, but
she was unable to take time off from work to undergo the
surgery.  In December 2005, Haar noted that Burgos's right hand
appeared to have mild sinovitis/tendonitis.

In 2006, Burgos was again treated for left shoulder, lower
back, bilateral knee and bilateral hand pain by Haar.  In
January, Haar diagnosed sinovitis/tendonitis in Burgos's right
hand.  Haar stated that her left shoulder and lower back were
unchanged.  October MRIs of Burgos's wrists found no problems.
Also in October 2006, Burgos visited Liu and complained of back
pain, which Liu said was related to her "uneven gait."  He found
that Burgos had pain in her paraspinous area, muscle spasms, and
other indications of back pain.  In December, Haar again
examined Burgos's wrists, and diagnosed her with mild to

moderate arthritis in both hands.  In January 2007, Liu again noted that Burgos experienced pain around the right knee, paraspinous and lumbar regions, and left shoulder.  Although Burgos complained twice of pain in her hands or wrist in 2007, there is no indication that this was treated by Haar or Liu. Burgos continued to visit Haar and Liu for her various complaints through August 2007.

B.   Medical Record After Burgos's Onset Date

On August 28, 2007, Burgos stopped working and on September 4, she underwent the left shoulder arthroscopy that had been recommended by Haar.  Follow-up examinations with Haar and Liu in September found swelling, limited motor strength, decreased range of motion and tenderness in her shoulder.  A November follow-up examination with Haar found minimal improvement in the shoulder and Haar diagnosed Burgos with adhesive capsulitis, also known as "frozen shoulder."  He recommended manipulation of the joint under anesthesia and arthroscopic lysis of adhesions.

In September and October 2007 Burgos complained of continued knee and back pain.  Liu found that Burgos's lumbar motion was stiff and produced discomfort, although she did not exhibit signs of spinal neuron damage.  He also found that Burgos had internal derangement of the right knee.  Haar found crepitus in the right knee and x-rays showed degenerative joint disease in the knees, especially the right knee.  During this

6

time, Burgos's knee and shoulder treatment involved medication and physical therapy.  Between August and December, Burgos did not complain of hand or wrist pain.  Liu noted in October 2007 that he believed Burgos would "remain out of work and disabled at this time," but also completed a form noting that her impairment preventing her from returning to work was "partial."

Burgos visited Liu and Haar roughly monthly in 2008.  Her left shoulder condition remained fairly unchanged since the surgery.  In August, Haar noted that Burgos's left shoulder still had restricted motion and flexion.  In December 2008, Haar reported decreased range of motion in her shoulder, but no shoulder deformities, 4+/5 muscle strength and no instability.  Haar recommended further surgery for the frozen shoulder.

In 2008, Burgos also continued to have trouble with her knees, especially her right knee.  In January, Liu noted crepitus and tenderness in the right knee and a flattening of the right quadriceps muscle.  In March, Haar found that her right knee had swelling, stiffness, pain and limited range of motion.  Her left knee had a lateral tilt.  He recommended surgical intervention for the left knee.  In May and August, Haar recommended Supartz injections into the right knee.  In June, Haar noted that Burgos had full range of motion in both knees with mild pain, endema and crepitus, but no instability.  She continued to complain of knee pain to Liu, stating in August

that it was difficult to walk and, especially, to ascend and
descend stairs.  Haar noted in August that Burgos was wearing
knee braces, and Liu noted in December that she was using a
cane.  In December, Burgos told Haar that the knee pain was
unrelieved by pain medication.  At the time, he ruled out
meniscal tears in the knees.

In addition to her left shoulder and knees, Burgos had
other medical complaints in 2008.  Burgos complained to Haar in
January that she had back pain and symptoms of carpometacarpal
derangement in the right hand.  In March, Haar found that
Burgos's right hand was tender, but that she had grip strength
of 4+/5.  He also found that she had pain at the extreme range
of motion in her right shoulder, with weakness in external
rotation and abduction.  In August, Haar noted that she still
had pain at the base of her left thumb.  Burgos did not complain
of back pain after January 2008.  There is no indication in the
records from Burgos's treating physicians that she received any
treatment for hand, wrist or back pain in 2008.  Haar and Liu
both noted in medical records and forms prepared for the
workers' compensation board their opinion that Burgos was
disabled between January and August 2008; starting in May, Liu
noted that he believed the degree of her impairment was "total."

In August 2008, Haar cleared Burgos to return to work.  She
attempted to work but stopped after two days due to pain.  On

September 3, Haar stated that she was "permanently totally disabled." Following an examination in October, Haar noted that Burgos's complaints of pain in both knees and left shoulder and symptoms of bilateral carpal tunnel syndrome were consistent with derangement of joint function. Liu also noted that Burgos was unable to work, and repeated that observation in January and March 2009.

In January, February and March 2009, Haar administered Supartz injections to both of Burgos's knees. Burgos reported some improvements after these injections. This was confirmed in examinations by Haar and Liu.

On March 30, 2009, Haar completed a medical questionnaire about Burgos. He reported that she had severe pain and stiffness of both knees and hands, as well as frozen shoulder. Haar noted that among the clinical findings he had made were a meniscus tear of the right knee, a rotator cuff tear in the left shoulder, osteoarthritis in both knees and arthritis in both hands, all tested through MRIs and x-rays. He opined that Burgos would have to lie down for approximately two hours during the day due to chronic knee pain, and that she could sit and stand continuously for only one hour each. Haar opined that Burgos could walk continuously for 20 minutes. He also said that Burgos would never be able to lift and carry up to five pounds or bend, squat, or crawl. But, she would be able to

9

occasionally climb, reach, and use her hands for simple grasping and fine manipulations as long as they did not involve pushing and pulling of arm controls.  Haar noted that Burgos would be able to travel alone on a daily basis by bus or subway.  Haar again stated that she was "totally disabled."

     C.    Medical Evaluations by Non-Treating Physicians

     On December 4, 2007, Dr. Barry Katzman ("Katzman"), an orthopedic surgeon, examined Burgos in connection with her workers' compensation proceedings.  He reported that Burgos's September 2007 left shoulder surgery had not improved her condition, and that she had pain in that shoulder, knees, hands and feet.  Katzman noted that Burgos had a normal gait without assistive devices.  Her range of movement was limited in her left shoulder, she showed positive signs for impingement of the rotator cuff tendon, and had some shoulder instability.  Burgos's knees appeared stable with full range of motion, although with tenderness in the right knee.  Katzman noted that her wrists had full range of motion, no tenderness, and no signs of carpal tunnel syndrome.

     Katzman opined on Burgos's functional ability, taking into account both his examination and his review of Burgos's medical records from 2005-2007.  He concluded that she had a moderate disability but could return to work in a position that did not

involve lifting her left arm.  He recommended further treatment to her left shoulder.

On January 29, 2008, Burgos underwent an orthopedic examination by Dr. Mariya Tsinis ("Tsinis"), a consultant for the Commissioner.  During the examination, Burgos complained of pain in her left shoulder, in both hands with repetitive movements, in both knees while walking and using stairs, and in the lower back with prolonged sitting or exposure to cold weather.  Burgos stated that she could sit for one or two hours and could walk for three blocks, but had difficulty with stairs and could not lift any weight with her left arm.

Tsinis noted some limitation to Burgos's lumbar flexion and extension, but normal lateral rotation and flexion.  The straight leg test found no indication of lower back pain, but there was tenderness in the lower back.  Tsinis also found limitation in left shoulder flexion, but normal right shoulder motion with pain.  Tsinis noted that the wrist joints had normal range of motion with pain and tenderness on the bilateral first metacarpal joint.  Burgos's hands also had full range of motion and no swelling.  She had full muscle power except in the left shoulder.  Tsinis found that her knee joints had diminished motion but were not swollen.  Burgos had a normal gait and normal ability to sit and get up from a sitting position.

Tsinis diagnosed lumbosacral derangement, left frozen shoulder, joint pain in both wrists and right shoulder, and internal derangement of both knees.  Tsisnis opined that Burgos's ability to lift, carry, push and pull with her left arm was moderately to severely impaired.  Burgos had mild to moderate impairment in walking, mild impairment in sitting and no impairment in fine manipulation.

In June 2008, Katzman examined Burgos again, and noted that her left shoulder surgery had "somewhat" improved her condition, as had right knee surgery.  He found continued limited movement in her left shoulder and signs of impingement.  Katzman also found that Burgos had a full range of wrist motion without tenderness or signs of carpal tunnel, although she did have some limitation of supination.  He found that Burgos's right knee had full motion without tenderness or instability.  Her left knee had limited flexion but no tenderness or instability.  Katzman concluded that Burgos had mild disability and could return to work with no lifting greater than 30 pounds or overhead lifting based on his examination and review of her medical records dating back to 2003.

Another evaluation in November 2008 by Katzman found similar results.  Burgos did, however, demonstrate greater left shoulder pain and more limited flexion and tenderness in both knees.  Katzman concluded that Burgos had moderate disability

but could work in a position that did not require lifting her
left arm or extensive walking.

II.  Procedural History

     Burgos applied for DIB on September 17, 2007, alleging a
disability starting on August 28, 2007.  Her claim was initially
denied on February 21, 2008.  She timely requested a hearing
before an administrative law judge, which was confirmed by
letter from the Social Security Administration ("SSA") on April
30, 2008.

     The hearing before Administrative Law Judge Kenneth G.
Levin ("the ALJ") took place on April 3, 2009.  At the hearing,
Burgos testified that she was disabled due to injury of her left
shoulder, arthritis in her knees, feet and hands, and back pain.
She also claimed to sometimes have muscle spasms in her shoulder
which she felt in her ears, neck and face.  As a result of these
conditions, she claimed that her ability to sit, stand, walk,
lift and crouch was limited.  For example, when sitting more
than an hour, she sometimes needed to stand up or put her legs
up to relieve pain.  Burgos also testified that she suffered
from depression, but that she discontinued treatment for the
depression because she could not afford the co-payment required
by her new insurance company.  She had continued to take Valium
prescribed by her doctor when she felt "really really bad."  She
testified that she alternated Mobic with ibuprofen to treat

physical pain and took Flexeril at night as a muscle relaxant.
Burgos testified that her left shoulder surgery had restored
some range of motion.  Burgos also described the limitations in
her daily activities.  She was able to travel by bus and subway,
although stairs present a difficulty.  She performed some
household chores with assistance, and polished and cooked on her
own.  She could also go shopping when a friend would drive her,
but she typically stayed at home, watching television, listening
to music and reading.  Burgos claimed that after her closed
period of disability benefits ended in 2005, she was still not
ready to go back to work, as she had pain in her legs and
shoulder.  When she was approved for the rotator cuff surgery,
she felt that she couldn't afford not to work and also felt that
she was not prepared to undergo another surgery at the time.
Burgos said that she had stopped work in August 2007 because of
her impending rotator cuff surgery.

     The ALJ asked Dr. Charles Plotz ("Plotz") to testify at the
hearing as a medical expert.  Plotz testified that in his review
of Burgos's medical records, she was not totally disabled such
that she could not work.  He agreed that her activity was
limited due to osteoarthritis in both knees and left frozen
shoulder.  He found little evidence in the record for Burgos's
claims regarding her hand and back pain.  Plotz testified that
Burgos should have no limitation of her ability to sit,

especially if she were permitted to stand when uncomfortable, and that it would be reasonable to require her to stand or walk under two hours during the workday and lift and carry twenty pounds or less.  He said that there was no basis for Haar's opinion that Burgos could sit for only one hour or that she could not lift items weighing less than twenty pounds.  He also did not see in the record a basis for Burgos's claim that her right shoulder also bothered her.

A vocational expert, Andrew Pasternak ("Pasternak"), also testified at the hearing.  He was asked to consider the vocational opportunities for an individual of Burgos's age, education and prior work experience who was limited to routine, repetitive tasks and sedentary work -- sitting for at least six hours of an eight-hour day, standing or walking no more than two hours, lifting or carrying no more than ten pounds -- and with limitations in overhead reaching and pushing or pulling with her left arm.  Pasternak testified that there were a variety of jobs in large quantity both locally and nationally for someone meeting that description, including order clerk, document preparer, machine tender and surveillance system monitor.

The ALJ issued his decision on April 23, 2009, and found that Burgos was not disabled within the meaning of the Act since the date of her application, and was therefore not entitled to benefits.  He found that Burgos's "allegations regarding the

severity of her symptoms and the degree of her functional
limitations are not fully credible."  The ALJ found that
although Burgos suffered from "severe" impairments, in the form
of "(probable) osteoarthritis," frozen left shoulder and
obesity, these impairments did not individually or in
combination meet the requirements of any impairment that would
qualify her for DIB.  He found that there was no evidence that
Burgos continued to have a meniscal tear in her knee, that her
rotator cuff was still torn, or that she had arthritis in either
hand.  Instead, he found that Plotz's assessment of Burgos's
condition and ability to be reasonable.

The ALJ also assessed Burgos's residual functional capacity
("RFC") and found that she could perform simple, routine,
repetitive sedentary work which does not involve overhead
reaching, pushing or pulling with her left arm.  He found that
she had significant limitations of her ability to sit, and could
stand or walk for up to two hours during the work day and lift
or carry up to ten pounds.  Although with this RFC she could not
return to her prior job as a library stack supervisor, there
were other jobs that she could perform in significant numbers
both locally and nationally.

Burgos requested review of the ALJ's decision from the
Appeals Council, submitting further materials that the ALJ had
not reviewed -- medical records from Haar dated between July

16

2003 and May 2007 and records from Liu dated between October 2006 and January 2007.  The Appeals Council denied her request for review on February 5, 2010, making the ALJ's decision the final decision of the Commissioner.  On March 25, 2010, Burgos filed her complaint with the district court.  The parties' cross-motions for judgment on the pleadings were fully submitted on January 18, 2011.

DISCUSSION

I.   Standard of Review and Statutory/Regulatory Framework

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A determination of the ALJ may be set aside only if it is based upon legal error or is not supported by substantial evidence.  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Furthermore, if the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive.  Diaz v.

Shalala, 59 F.3d 307, 312 (2d Cir. 1995).  "Where there is
substantial evidence to support either position, the
determination is one to be made by the factfinder."  Alston v.
Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).  A case may be
remanded if the Commissioner has failed to provide a full and
fair hearing, to make explicit findings, or to have correctly
applied the law and regulations.  Rosa v. Callahan, 168 F.3d 72,
82-83 (2d Cir. 1999).

The Commissioner will find a claimant disabled under the
Act if the claimant demonstrates the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The claimant's impairment must be "of such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy."  Id. § 423(d)(2)(A).  The
disability must be "demonstrable by medically acceptable
clinical and laboratory diagnostic techniques."  Id.
§ 423(d)(3).

The Commissioner uses a five-step process when making disability determinations.  See 20 C.F.R. §§ 404.1520 & 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant
> is currently engaged in substantial gainful activity.
> Where the claimant is not, the Commissioner next
> considers whether the claimant has a "severe
> impairment" that significantly limits her physical or
> mental ability to do basic work activities.  If the
> claimant suffers such an impairment, the third inquiry
> is whether, based solely on medical evidence, the
> claimant has an impairment that is listed in 20 C.F.R.
> Part 404, Subpart P, Appendix 1.  Assuming the
> claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe
> impairment, she has the residual functional capacity
> to perform her past work.  Finally, if the claimant is
> unable to perform her past work, the burden then
> shifts to the Commissioner to determine whether there
> is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (citation omitted).  A claimant bears the burden of proof as to the first four steps, while there is a limited shift of the burden in the final step to the Commissioner to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

II.  Evaluation of the ALJ's Decision

Burgos contends that the ALJ erred by failing to (a) fully and adequately develop the record, (b) properly consider her testimony, and (c) give the opinions of Haar and Liu controlling weight under the "treating physician rule" or explain his

reasons for not giving their opinions controlling weight. Burgos also alleges that the ALJ's decision is not supported by substantial evidence in the record.  Because this Opinion finds that the ALJ committed legal error in failing to provide good reasons for not accepting the opinions of Burgos's treating physicians, this case is remanded to the Commissioner for further proceedings.  Whether the ALJ's decision was supported by substantial evidence in the record need not be addressed at this time.

A.   No Legal Error in the ALJ's Development of the Record

Burgos claims that the ALJ improperly rejected records offered by her counsel dated prior to June 2007 and therefore failed to properly consider all the available evidence in making his decision.  Although her application for DIB states that her disability began on August 28, 2007, Burgos argues that the ALJ had a duty to develop her record starting on March 21, 2003, the date of the accident that resulted in her initial injury.

"[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). SSA regulations require that an ALJ "inquire fully into the matters at issue and shall receive in evidence the testimony of

witnesses and any documents which are relevant and material to such matters."  20 C.F.R. § 702.338.

It is not disputed that Burgos has suffered a variety of medical ailments since March 21, 2003, and that many, and perhaps nearly all, of these ailments are linked to the accident that occurred on that date.  But, Burgos was already approved for and received DIB for the period of September 2003 to January 2005.  Therefore, it is not necessary for the ALJ to determine if she was disabled during that period.  Burgos returned to work until August 28, 2007.  Although her moving papers argue that she returned to work as a stacks supervisor during this two and a half year period "despite pain," neither her application for DIB, her testimony, nor any other document in evidence makes an allegation that she was disabled during this period while she worked.  Indeed, by the definition laid out in the SSA regulations, she was not disabled at that time because she had gainful employment.  20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

What was relevant for the ALJ to consider, however, was medical evidence that could support Burgos's claim that she had a disability preventing her from working starting on August 28,

2007.  Burgos misquotes the SSA's regulation regarding the
development of the medical history.  The regulation provides, in
relevant part,

> Before we make a determination that you are not
> disabled, we will develop your complete medical
> history for at least the 12 months preceding the month
> in which you file your application unless there is a
> reason to believe that development of an earlier
> period is necessary or unless you say that your
> disability began less than 12 months before you filed
> your application. . . .
> (2) By "complete medical history," we mean the records
> of your medical source(s) covering at least the 12
> months preceding the month in which you file your
> application.  If you say that your disability began
> less than 12 months before you filed your application,
> we will develop your complete medical history
> beginning with the month you say your disability began
> unless we have reason to believe your disability began
> earlier.

20 C.F.R. §404.1512(d).  This regulation is clear that the ALJ's
duty to develop the record is connected to what the claimant
herself alleges about her disability.  If the claimant alleges
that her disability began less than 12 months prior to filing
her application, there is no need for the ALJ to develop the
record for the full 12 months preceeding the application date
unless the ALJ has some reason to believe that the disability
began earlier than the claimant has stated.  Id.  In other
words, the ALJ must develop the medical history starting in the
month when the claimant has alleged her disability began, or in
the month when the ALJ has reason to believe the disability
began, whichever is earlier.

It was not an error for the ALJ to review medical evidence only as far back as June 2007. In her application for benefits filed in September 2007, Burgos alleged that her disability began in late August 2007. Therefore, the record reviewed by the ALJ predated the alleged onset of disability by three months. Although there may be evidence that Burgos suffered from various ailments before June 2007, there is no evidence and no allegation that might indicate to the ALJ that these medical conditions constituted a disability between the end of the last disability period in January 2005 and August 2007. Indeed, because Burgos was gainfully employed during that period, there is every reason to believe that Burgos did not suffer from a disability until the date Burgos herself alleges the disability began.

Furthermore, because the record reviewed by the ALJ contained records from Burgos's frequent visits to Dr. Haar and Dr. Liu, which often occurred more than once a month, there was no lack of medical evidence during the alleged period of disability and the three months immediately preceding to give the ALJ a full view of Burgos's medical conditions and limitations during the relevant period. For example, Burgos complains that the record reviewed by the ALJ does not include a February 27, 2004 examination by Dr. Haar in which he reported the MRI results for her left shoulder and stated the need for

23

arthroscopy.  Although this examination (which actually occurred
on February 17, 2004) certainly contains relevant data
concerning Burgos's left shoulder, the record that the ALJ did
review is replete with information about the condition of her
left shoulder during the relevant period, including examinations
both before and after her arthroscopic surgery, which took place
on September 4, 2007.  Indeed, the ALJ agreed that the medical
evidence showed that Burgos had a frozen shoulder and an
inability to use her left arm for pushing or pulling.
Therefore, it is unclear what further relevant information there
might be that Burgos alleges was not considered by the ALJ, or
how such earlier records might have changed his decision when he
was already in agreement that she had a significant injury to
the left shoulder.

     Perhaps more importantly, the records missing from the
record considered by the ALJ were submitted by Burgos to the
Appeals Council.  The Appeals Council is required to "evaluate
the entire record including the new and material evidence
submitted" by a petitioner upon appeal of an ALJ's decision.  20
C.F.R. § 404.970.  Therefore, by the time the Commissioner's
decision became final, which occurred only once the Appeals
Council denied review of the ALJ's decision, see 20 C.F.R. §§
404.955, 416.1481, the record that had been under consideration
by the Commissioner included all documents that Burgos now

argues should have been included.  Perez v. Chater, 77 F.3d 41,
45 (2d Cir. 1996).  Therefore, the decision of the Commissioner
incorporated these medical records since the initial injury in
2003.

     B.   The ALJ Committed No Legal Error in Assessing Burgos's
           Credibility.

An ALJ must also "carefully consider the individual's
statements about symptoms" along with all of the other evidence
in the case record, and must make findings about the credibility
of the claimant's statements.  See Evaluation of Symptoms in
Disability Claims: Assessing the Credibility of an Individual's
Statements, Soc. Sec. Ruling 96-7p, 61 Fed. Reg. 34,483, 34,484
(July 2, 1996).  "An individual's statements about the intensity
and persistence of pain or other symptoms or about the effect
the symptoms have on his or her ability to work may not be
disregarded solely because they are not substantiated by
objective medical evidence."  Id.  An ALJ will consider the
following factors when evaluating a claimant's symptoms: (1) the
claimant's daily activities; (2) the location, duration,
frequency, and intensity of the claimant's pain or other
symptoms; (3) precipitating and aggravating factors; (4) the
type, dosage, effectiveness, and side effects of any medication
the claimant takes or has received for relief of his pain or
other symptoms; (5) treatment, other than medication, the

claimant receives or has received for relief of his pain or
other symptoms; (6) any measures the claimant uses or has used
to relieve his pain or other symptoms; and (7) other factors
concerning the claimant's functional limitations and
restrictions due to pain or other symptoms.  20 C.F.R. §
416.929(c)(3).  Conclusory findings of a lack of credibility
will not suffice; rather, an ALJ's decision "must contain
specific reasons for the finding on credibility, supported by
the evidence in the case record, and must be sufficiently
specific to make clear to the individual and to any subsequent
reviewers the weight the adjudicator gave to the individual's
statements and the reasons for that weight."  Soc. Sec. Ruling
96-7p, 61 Fed. Reg. at 34,484.

     A finding of credibility made by an ALJ is entitled to
deference by a reviewing court.  The ALJ, "after weighing
objective medical evidence, the claimant's demeanor, and other
indicia of credibility . . . may decide to discredit the
claimant's subjective estimation of the degree of impairment."
Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (citation
omitted).  "If the Secretary's findings are supported by
substantial evidence, the court must uphold the ALJ's decision
to discount a claimant's subjective complaints of pain."  Aponte
v. Sec'y Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d
Cir. 1984) (citation omitted).  Thus, a determination of

credibility will only be set aside if it is not set forth "with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

The ALJ found that Burgos's "allegations regarding the severity of her symptoms and the degree of her functional limitations are not fully credible." This finding implies, of course, that the ALJ found that Burgos's allegations were entitled to some credibility. The decision describes the extent to which the ALJ did not find Burgos's allegations credible. The ALJ found that her testimony that she continued to suffer from severe back pain was not entirely credible because she was not receiving treatment for back pain, such pain was mentioned rarely in the medical record since the alleged onset date, and because Burgos herself did not mention back pain at the hearing until she was prompted by counsel. Burgos's testimony regarding her depression was viewed with skepticism because she was receiving no mental health treatment other than taking Valium prescribed by her family doctor and because she had not listed any mental health issue in her application for benefits. The ALJ discounted the extent of Burgos's walking limitation by noting that she was able to take public transportation, including the subway with some effort, and because her medical records indicated that physical therapy and Synvisc injections

had provided some relief for her knee conditions.  The ALJ also
found that Burgos's complaints regarding arthritis in her hands
were not supported by medical records indicating either
treatment or significant limitations in the use of her hands
during the period of alleged disability.  Regarding each of
these allegations, the ALJ also pointed to objective findings by
treating and examining physicians who found that Burgos's
symptoms and limitations were less severe than she alleged.
Through these findings, the ALJ avoided legal error by providing
ample reasoning for his credibility determination, citing many
of the factors suggested under the regulations.  20 C.F.R. §
416.929(c)(3).

> C.    The ALJ's Decision Failed to Provide Good Reasons for
>       Not Giving Haar and Liu's Opinions Controlling Weight
>       Under the Treating Physician Rule.

Burgos also claims that the ALJ did not properly credit her
treating physicians' opinions, committing legal error by failing
to follow the "treating physician rule."  She notes that Liu is
not mentioned in the ALJ's decision and argues that Haar's
opinions regarding her disability are not given sufficient
weight.

With respect to the determination of the nature and
severity of a claimant's impairment,

> [t]he SSA recognizes a "treating physician" rule of
> deference to the views of the physician who has
> engaged in the primary treatment of the claimant.

28

> According to this rule, the opinion of a claimant's
> treating physician as to the nature and severity of
> the impairment is given "controlling weight" so long
> as it is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is
> not inconsistent with the other substantial evidence
> in [the] case record.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation

omitted).

> An ALJ who refuses to accord controlling weight to the
> medical opinion of a treating physician must consider
> various "factors" to determine how much weight to give
> to the opinion.  20 C.F.R. § 404.1527(d)(2).  Among
> those factors are: (i) the frequency of examination
> and the length, nature and extent of the treatment
> relationship; (ii) the evidence in support of the
> treating physician's opinion; (iii) the consistency of
> the opinion with the record as a whole; (iv) whether
> the opinion is from a specialist; and (v) other
> factors brought to the Social Security
> Administration's attention that tend to support or
> contradict the opinion.  The regulations also specify
> that the Commissioner "will always give good reasons
> in [her] notice of determination or decision for the
> weight [she] give[s] [claimant's] treating source's
> opinion.

Halloran, 362 F.3d at 32 (citation omitted).  After considering

these factors, the ALJ must "comprehensively set forth [his]

reasons for the weight assigned to a treating physician's

opinion."  Id. at 33.  Failure to provide good reasons for not

crediting the opinion of a claimant's treating physician is a

ground for remand.  Burgess, 537 F.3d at 129.

On the other hand, "the opinion of the treating physician

is not afforded controlling weight where . . . the treating

physician issued opinions that are not consistent with other

substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Furthermore, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (citation omitted). But any decision not to give a treating physician's opinion controlling weight must always be supported by "good reasons in our notice of determination or decision." 20 C.F.R. § 404.1527.

Even though, as Burgos notes, Liu is never mentioned by name in the ALJ's report, this itself is not legal error and does not indicate that the medical records provided by Liu were not considered or that his opinion was not given controlling weight. In fact, the ALJ clearly made reference to records of Liu at the hearing and indicated that he had taken notes regarding those records. But Burgos also argues that the ALJ ignored or failed to properly credit Liu's opinion that she was "unable to work." From October 2007, the first time Liu indicated that Burgos was "disabled," though March 2008, these findings were paired with documents that indicated he believed that she was only partially limited in her ability to work. These records at the start of Burgos's alleged disability period

suggest that Liu may have believed only that Burgos was unable
to continue her former position as a stacks supervisor, an
opinion that is consistent with the ALJ's findings.  In later
months, however, Liu opined that Burgos was totally disabled,
although in a somewhat conclusory manner.  This opinion is at
odds with the ALJ's findings, yet is not mentioned anywhere in
the ALJ's decision.

Burgos similarly argues that the ALJ failed to give
appropriate weight to Haar's opinions.  In contrast to Liu's
findings, many of Haar's opinions were described in the ALJ's
decision, and the decision appears to accept some of these
findings.  But the ALJ failed to mention the reports between
March 2008 and December 2008 in which Haar opined that Burgos
was totally disabled, although he did note that at one point, in
August 2008, Haar had cleared Burgos to return to work on "light
duty" (a decision that was rescinded by September 2008).  The
ALJ rejected Haar's March 2009 opinion that Burgos had severe
functional limitations, including limited ability to sit, stand
or walk, below the level required for sedentary work.  The ALJ's
explanation for rejecting these findings, however, is limited
and contradicted even within the same decision.  The ALJ noted
that of the four conditions discussed in Haar's March 2009
report, "the rotator cuff tear has long since been repaired, . .
. there is no radiographic evidence (after claimant's surgery)

31

to show a meniscal tear (though one was repaired in 2003) or,
for that matter osteoarthritis [in the knees]. . . . [T]here is
no treating evidence at all of claimant's having arthritis in
her hands (or either of them)." But the ALJ found that despite
past surgeries, Burgos continued to suffer from frozen shoulder
and "severe," "probable" osteoarthritis in the knees.  In
addition, the Commissioner has conceded that there was, in fact,
radiographic evidence of osteoarthritis in Burgos's right knee.

The opinions of Liu and Haar as to Burgos's disability are
"not [themselves] determinative." Green-Younger, 335 F.3d at
106 (citation omitted).  But it is clear that the ALJ's decision
to reject their opinions must be more fully explained.

> Reserving the ultimate issue of disability to the
> Commissioner relieves the Social Security
> Administration of having to credit a doctor's finding
> of disability, but it does not exempt administrative
> decisionmakers from their obligation, under Schaal and
> § 404.1527(d)(2), to explain why a treating
> physician's opinions are not being credited.  The
> requirement of reason-giving exists, in part, to let
> claimants understand the disposition of their cases,
> even -- and perhaps especially -- when those
> dispositions are unfavorable.  A claimant like [the
> plaintiff], who knows that her physician has deemed
> her disabled, might be especially bewildered when told
> by an administrative bureaucracy that she is not,
> unless some reason for the agency's decision is
> supplied.  [The plaintiff] is not entitled to have
> [her treating physician's] opinion on the ultimate
> question of disability be treated as controlling, but
> she is entitled to be told why the Commissioner has
> decided -- as under appropriate circumstances is his
> right -- to disagree with [the treating physician].

Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation
omitted).  The ALJ failed to address any of Liu's or Haar's
opinions that Burgos was disabled and did not provide an
adequate explanation for the rejection of Haar's opinion,
supported as it was by some specific medical findings, that
Burgos had limited functional capacity.  The ALJ's decision,
therefore, did not provide "good reasons for not crediting the
opinion of [Burgos's] treating physician[s]."  Burgess, 537 F.3d
at 129-30.  Furthermore, unlike the ALJ decision under review in
Halloran which cited specific faults in the treating physician's
opinion, it is not possible to determine if the ALJ here
"applied the substance of the treating physician rule."
Halloran, 362 F.3d at 32-33.

Although the Commissioner argues that the treating
physicians' opinions as to disability are not entitled to
controlling weight, he does not address the requirement that the
ALJ provide "good reasons" for the decision not to accept those
opinions.  Barry v. Schweiker, 675 F.2d 464 (2d Cir. 1982),
cited by the Commissioner, holds that a court may affirm a
decision to deny benefits if there is substantial evidence to
support rejecting claimed impairments, even if an ALJ has failed
to provide a full explanation for that decision.  Id. at 469.
Barry does not, however, indicate that the existence of
substantial evidence is sufficient to excuse a legal error -- in

this case a failure to give an explanation for disregarding a
treating physician's opinion.  To the contrary, "where there is
a reasonable basis for doubt whether the ALJ applied correct
legal principles," such as the treating physician rule,
"application of the substantial evidence standard to uphold a
finding of no disability creates an unacceptable risk that a
claimant will be deprived of the right to have her disability
determination made according to the correct legal principles."
Schaal, 134 F.3d at 504 (citation omitted).

III.    Disposition

"Where there are gaps in the administrative record or the
ALJ has applied an improper legal standard, [the Second Circuit
has], on numerous occasions, remanded to the [Commissioner] for
further development of the evidence."  Rosa, 168 F.3d at 77.
Remand is appropriate when an ALJ's decision does not
appropriately apply the treating physician rule or provide
adequate explanation for the ALJ's departure from that rule.
Burgess, 537 F.3d at 130.  On remand, the ALJ is instructed to
provide "good reasons" for his decision not to grant the
opinions of Haar and Liu controlling authority under the
treating physician rule. [1]

---

[1]    Because this case is remanded for legal error, it is not
necessary to determine here if, barring such error, there was
substantial evidence supporting the ALJ's determination that
Burgos was not eligible for DIB.

CONCLUSION

The Commissioner's October 1, 2010 motion for judgment on the pleadings is denied.  Burgos's September 30, 2010 motion for judgment on the pleadings is also denied, but her motion for remand is granted.  The case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion.  This judgment disposes of the action.  See Sullivan v. Finkelstein, 496 U.S. 617, 624-25 (1990).  The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          April 29, 2011

DENISE COTE
United States District Judge

35